NOT DESIGNATED FOR PUBLICATION

No. 128,818

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL E. ANZIANA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Submitted without oral argument. Opinion filed August 14, 2026. Reversed.

*Derrick Pierce Smith*, of Wichita, for appellant.

*Lance J. Gillett,* assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., BRUNS and HURST, JJ.

PER CURIAM: Michael E. Anziana was convicted of misdemeanor criminal sodomy and appeals on multiple grounds. This court finds insufficient evidence to support the conviction and thus it is unnecessary to evaluate the remaining allegations of error. Anziana's conviction is reversed and his sentence is vacated.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2024, the State charged Anziana with one count of misdemeanor criminal sodomy with an animal, a dog, in violation of K.S.A. 21-5504(a)(2). At a bench trial, the State presented the testimony of Carmen (a pseudonym) and a Sedgwick County sheriff's deputy. According to Carmen, she walked into the living room and alleged she saw Anziana on his knees behind Carmen's pit bull terrier dog and that "[Anziana's] penis came up and his pants came up at the same time." Carmen testified that Anziana was "[l]ess than a foot" away from the dog.

Carmen asked Anziana "what the hell he was doing." Anziana said he was playing with the dog and, according to Carmen, "started trying to cover [the dog] up with a blanket," which Carmen thought "was weird . . . because [the dog] had just got sprayed by a skunk the day before." When Carmen examined the dog later, she saw "liquid coming out of [the dog's] vagina." Carmen also inspected the spot where the dog had been in the living room by Anziana and saw "a wet spot" "about the size of a softball." Carmen contacted law enforcement the next day.

The deputy testified that he responded to Carmen's report regarding Anziana and examined Carmen's dog. The deputy testified that his wife and mother-in-law breed dogs and have been doing so for three or four years, so he has "seen specifically female dogs that have been bred." The deputy testified that Carmen's dog "appear[ed] to have been bred . . . ." Following the testimony of Carmen and the deputy, Anziana moved for a judgment of acquittal, which the district court denied.

Anziana then testified to his version of events—which did not include anything untoward—he maintained that he was "sitting on the couch[,] . . . drinking beer and watching anime on [his] phone." He denied that Carmen ever saw his penis or that he did anything other than pet the dog. Anziana tried to discredit Carmen by testifying she had

2

accused her husband of other things for which he was imprisoned and that Carmen regularly smoked marijuana.

The parties then gave their closing arguments. After a brief recess, the district court convicted Anziana on the charge, referring to Carmen's "highly credible" testimony and the "observations of the [dog]." Before the proceedings ended, the prosecutor raised the issue of whether criminal sodomy of an animal required registration under the Kansas Offender Registration Act (KORA). The district court indicated it was unsure if the conviction required KORA registration and that the matter would be taken up at sentencing.

Anziana filed a motion for a new trial, arguing generically that the district court "may have erred" in its rulings on motions, in denying Anziana's request for a judgment of acquittal, and in convicting Anziana based on the evidence presented during the bench trial. At the sentencing and motion hearing, Anziana's counsel provided argument on why Anziana was entitled to a new trial:

> "[W]ith all deference and respect to the Court, I don't think the State proved their case beyond a reasonable doubt. I think that Mr. Anziana—if he had had further opportunity to describe the situation, he would—he [*sic*] would probably end in a different result and be found not guilty of this at a—if he was granted an opportunity for a future trial."

Counsel also argued "there was no direct evidence" that Anziana had committed the crime. The district court explained that the conviction rested on its understanding of the circumstantial evidence and reiterated its belief that the evidence presented was adequate to sustain a conviction. The court also found that "both parties had free rein to present any and all evidence" and that no "errors of any material or substantive nature" occurred justifying the granting of a new trial. Thus, the court denied Anziana's motion.

The hearing then proceeded to sentencing, where the parties reentered discussions about KORA registration. The court expressed its uneasiness about the result but found that KORA applied based on the plain language of K.S.A. 22-4902(b)(4): "I'm not saying that this is a clean fit, but even you all . . . are familiar with the Appellate Courts mantra that, well, the plain—plain language dictates as a general rule—as an overwhelming general rule so I don't see any out." The court "strongly encourage[d]" Anziana to appeal the finding that KORA applied. The court then sentenced Anziana to six months in jail.

## DISCUSSION

Anziana raises four issues on appeal: (1) the district court erred by failing to provide a jury trial; (2) the district court erred in convicting Anziana and denying Anziana's motion for a new trial because the evidence was insufficient; (3) the district court erred in permitting the officer to testify about dog breeding; and (4) the district court erred in requiring Anziana to register under KORA. Because this court agrees with Anziana's argument that insufficient evidence supported his conviction, which is dispositive, it is unnecessary to review the other claims of error.

### THERE WAS INSUFFICIENT EVIDENCE FOR THE CONVICTION

Anziana combines a claim related to the district court's denial of his motion for a new trial with his claim related to the sufficiency of the evidence to sustain the conviction. He does not otherwise address any claim of error related to the motion for new trial and thus any such allegation is waived or abandoned. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). However, Anziana adequately argues that there was insufficient evidence to sustain his conviction.

In reviewing the sufficiency of evidence to sustain a conviction, the appellate court reviews the evidence in the most favorable light to the State "to determine whether

4

a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024). The reviewing court does "not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses." 319 Kan. at 723. "It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed." *State v. Zeiner*, 316 Kan. 346, 350, 515 P.3d 736 (2022).

To sustain a conviction against Anziana, the State needed to prove beyond a reasonable doubt that he engaged in sodomy with an animal. See K.S.A. 21-5504(a)(2). Sodomy is defined, in relevant part, as "oral or anal copulation or sexual intercourse between a person and an animal." K.S.A. 21-5501(b). There was no evidence at trial suggesting that any "oral or anal copulation" occurred, so this court must review the sufficiency of the evidence related to "sexual intercourse." Sexual intercourse is defined as "*any penetration* of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse." (Emphasis added.) K.S.A. 21-5501(a).

It is undisputed that there is no direct evidence of criminal sodomy—that is, without relying on inference or presumption, there is no evidence that proves Anziana sodomized the dog. See *State v. Stuart*, 319 Kan. 633, 639, 556 P.3d 872 (2024) (explaining differences between direct and circumstantial evidence). Circumstantial evidence is that which "'tends to prove a fact in issue by proving other events or circumstances which afford a basis for reasonable inference'" of the fact in issue. *Stuart*, 319 Kan. at 639.

Anziana concedes that a criminal conviction can be based solely on circumstantial evidence. Circumstantial evidence can support a conviction of even the gravest offense if the evidence allows a fact-finder to find the elements beyond a reasonable doubt. See *State v. Longoria*, 301 Kan. 489, 533-35, 343 P.3d 1128 (2015) (sufficient circumstantial

evidence supported aggravated criminal sodomy); see also *State v. Harmon*, No. 105,010, 2012 WL 1970056, at *2-3 (Kan. App. 2012) (unpublished opinion) (circumstantial evidence of sodomy based on testimony from victim and statements by defendant to police). Circumstantial evidence sufficient to sustain a conviction does not need to exclude every other reasonable conclusion. *State v. Barnes*, 320 Kan. 147, 177-78, 563 P.3d 1255 (2025).

However, circumstantial evidence used to prove an element of a crime cannot be inferred or presumed from other circumstantial evidence that required inference and presumption. See *State v. Valdez*, 316 Kan. 1, 12, 512 P.3d 1125 (2022). Anziana maintains that the circumstantial evidence here was insufficient to establish criminal sodomy because it required improper inference stacking. "A conviction cannot be sustained by 'a presumption based upon other presumptions,' i.e. by inference stacking." *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021). The *Colson* court described the difference between multiple circumstances supporting a single inference versus stacking multiple inferences:

> "[W]hile it is impermissible for a case to rely upon the theory that presumption A leads to presumption B leads to presumption C leads to fact D, it is perfectly proper for the State's case to be grounded upon a theory that presumption A, presumption B, and presumption C all separately point to fact D." 312 Kan. at 750.

Here, the State presented the testimony of Carmen, who said she saw Anziana behind her dog with his penis exposed. Carmen said Anziana quickly pulled up his pants and covered the dog in a blanket. Later, she found a wet spot in the area and observed moisture coming out of the dog's genitals. These pieces of circumstantial evidence (Carmen's testimony that she saw Anziana exposed and the wet spot) do not reflect multiple inferences stacked together. Instead, the State asserts that these pieces of circumstantial evidence each independently support a single inference—that Anziana

6

sodomized the dog. "Impermissible inference stacking is not present where different circumstances are used to support separate inferences or where multiple pieces of circumstantial evidence separately support a single inference." *State v. Banks*, 306 Kan. 854, Syl. ¶ 3, 397 P.3d 1195 (2017).

However, the question remains as to whether each of these pieces of circumstantial evidence accomplishes the State's goal to support that single inference. To find him guilty of misdemeanor criminal sodomy of an animal, the fact-finder needed to conclude, beyond a reasonable doubt, that Anziana *penetrated*, even slightly, the dog's genitals. See K.S.A. 21-5501(a); *State v. Bennington*, 293 Kan. 503, 527, 264 P.3d 440 (2011). To be clear, there is no direct testimony or evidence that such penetration occurred here. Courts have consistently used a combination of victim testimony and forensic evidence as circumstantial evidence of criminal sexual conduct. See, e.g. *Longoria*, 301 Kan. at 533-35 (reviewing forensic evidence of fluids related to aggravated criminal sodomy via oral copulation); *State v. Moore*, 274 Kan. 639, 648-49, 55 P.3d 903 (2002) (reviewing sufficiency of the circumstantial victim testimony related to aggravated indecent liberties conviction). This is a unique situation in that the alleged victim, an animal, cannot testify as to what occurred. However, it remains necessary for the State to present evidence to establish each element of criminal conduct to convict.

Carmen testified that she saw Anziana less than a foot behind the dog with his penis exposed. She did not testify that she witnessed any contact between Anziana and the dog's genitals. Here, at best, Carmen's testimony established that Anziana was exposed near the dog, which does not establish a reasonable inference of penetration. When the evidence describes circumstances that may or may not involve penetration, it is insufficient to establish penetration. See, e.g., *State v. Bishop*, No. 118,896, 2019 WL 2398044, *1 (Kan. App. 2019) (unpublished opinion) (victim testimony insufficient to establish penetration when the phrase "fingered" was not further explained or defined).

7

Merely being exposed near the dog and placing a blanket on the dog is inadequate on its own to establish penetration.

Therefore, this court must determine whether the other circumstantial evidence could be used to established penetration. There was also evidence that Carmen observed both a wet spot in the area where the dog had been and liquid coming from the dog's genitals. Additionally, a police officer, ostensibly with experience in dog breeding, testified to the dog's physical condition the next day and that he believed the dog had been bred. There was no forensic testing establishing the content of the wetness or liquid described by Carmen or the officer. Moreover, there is no evidence establishing that Anziana's conduct caused or contributed to the presence of the wetness or liquid material. Therefore, to find that this evidence established an inference of penetration, the fact-finder would have to inference stack because the fact-finder would have to infer the content of the moisture *and* the cause of the moisture. See *Colson*, 312 Kan. at 750 (describing inference stacking).

For the wet spot to infer penetration, the fact-finder would be required to infer or presume that the wet spot came from either the dog's genitals or Anziana's genitals. The fact-finder would then also have to infer or presume that the moisture resulted from Anziana penetrating the dog's genitals rather than some other cause. Similarly, for the testimony about the existence of moisture on the dog's genitals to establish penetration, the fact-finder would have to infer the content of the moisture, the cause of the moisture, and that Anziana performed the act to cause the moisture. Even assuming that the officer's testimony regarding his belief that the dog appeared to have been bred was proper—nothing in that testimony established that Anziana's conduct the day before caused the dog to have that appearance. There is no evidence establishing the content of the moisture from the wet spot or the dog, thus there is no evidence about the cause of the moisture. Therefore any inference or presumption that Anziana caused the moisture

8

through penetration is merely speculation resulting from improper inference stacking. See *Stuart*, 319 Kan. at 639-41.

Neither the witness testimony nor the other circumstantial evidence established an essential element of criminal sodomy with an animal, so there was insufficient evidence to sustain Anziana's misdemeanor conviction.

CONCLUSION

Viewing the evidence in the most favorable light to the State, a rational fact-finder could not have found Anziana guilty beyond a reasonable doubt because there was insufficient evidence of penetration. Anziana's misdemeanor conviction for criminal sodomy is reversed and his sentence is vacated.

Reversed.